# EXHIBIT A-1

## Advisory Financial Services, LLC
## FACTORING AGREEMENT

Effective February 2, 2024, the Factoring Agreement is between
**Advisory Financial Services, LLC** with offices at 3020 Bellaire Ranch Dr #1524, Fort Worth, TX 76109, herein called **("AFS")**, and
**LA Services LLC** with offices at 223 Industrial Ave, Granbury, TX 76049 at hereinafter called **"(Client)"**.

Client and AFS agree that the following shall constitute the terms upon which AFS shall act as Client's sole factor.

### Section 1. Definitions

1.1 "Accounts" - All accounts presently existing and hereafter created accounts and contract rights including, but limited to, those related hereto, notes, drafts and other forms of obligations owed to or owned by Client arising or resulting from the sale of goods or the rendering of services, all proceeds thereof, all guaranties and security therefore, and all goods and rights represented thereby or arising there from. Including, but not limited to, the right of stoppage in transit, replevin, repossession and/or reclamation.

1.2 "Approved Account" – An Account with respect to which AFS has approved credit which has not subsequently been withdrawn.

1.3 "Collection Date" - The date on which AFS shall receive payment of an Account.

1.4 "Credit Risk" - The risk that a Client's customer will be financially unable to pay an Account provided that the merchandise has been received or services rendered and accepted by the Client's customer without Dispute.

1.5 "Dispute" - A dispute or claim, bona fide or otherwise, as to price, terms, quantity, quality, delivery of goods, delivery of services or any cause or defense to payment whatsoever other than financial inability to pay.

1.6 "Event of Default' - The occurrence of anyone or more of the acts or events described in Section 8.

1.7 "Net Amount" - The gross face amount of an Account less the discount offered by Client to Client's customers and approved or accepted by AFS.

1.8 "Non-Approved Account' - An Account with respect to which AFS has not approved credit or has subsequently withdrawn a credit approval.

1.9 "Obligations" - All loans, advances, debts, liabilities, obligations, covenants and duties owing by Client to AFS, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including, without limitation, invoices to Client from any company whose accounts are factored or financed by AFS, amounts owed under any other agreements between AFS and Client, and indebtedness arising under any guaranty made by Client to AFS or issued by AFS on Client's behalf, together with interest, collection and late charges, and attorney's fees.

**Section 2. Sale and Approval of Accounts**

2.1 From time to time, Client may sell, assign and transfer to AFS, and AFS may purchase from Client, Client's now outstanding and hereafter created or acquired Accounts, with full power to collect and otherwise deal therewith as the sole and exclusive owner thereof. Effective with each purchase by AFS of a Client's Account, Client shall have effectively executed an Assignment of the Account as per the execution of a Notice of Assignment as is represented by (Exhibit A) attached here to and incorporated by reference herein.

   (a) Client will submit the following information to AFS for AFS's credit approval of Client's customers: (i) a description of Client's customer normal payment terms, and (ii) such other information as AFS may request concerning Client's customers.

   (b) AFS will not have any obligation whatsoever to purchase any Account.

   (c) AFS shall have no liability to Client or to any customer for AFS's refusal to approve credit on an Account or AFS's withdrawal of a credit approval.

   (d) AFS may withdraw a single invoice or funding request by notifying Client verbally and/or in writing at any time prior to the delivery of goods or performance of services. A single order credit approval will be automatically withdrawn: (i) in the event delivery or performance is not made on or prior to the expiration date indicated on the written single order credit confirmation form AFS sends to Client; or (ii) in the event any change is made in the payment terms or performance of services of the Account.

2.2 Client provides AFS the legal authority to endorse checks sent to it by Account Debtors, but payable to Client.

2.3 AFS shall have full recourse to Client for all purchased Accounts. AFS shall have the right to chargeback and recover from Client any amounts owing on a purchased Account sixty (60) days from the date of the underlying invoice, or immediately in the event of a Dispute or Event of Default. In the event of a chargeback of amounts owing on an Account, AFS shall be entitled to receive, and to charge Client's account for, the factoring fee on the amounts charged back, as set forth in Section 3.2 below.

**Section 3. Payment and Fees**

3.1 For each Account purchased by AFS, AFS will pay Client the purchase price which is calculated by deducting from the Net Amount of the Account: a) AFS's factor fee as set forth in Section 3.2 below and b) all charges provided for hereunder, including, without limitation, allowances and charge backs. The purchase price, less the reserve (if AFS decides to establish a reserve) set forth in Section 3.3 below, will be funded to Client on the date of purchase.

3.2 For each Account AFS agrees to buy, AFS will buy Accounts for the purchase price as detailed in paragraph 3.1. The factor fee is set below in paragraph 3.2 on each purchased Account. The factor fee will increase based upon the number of days the Account is outstanding before the Collection Date, as shown in the following schedule.

| From Invoice Date, if the number of days the Account is outstanding is: | The factoring fee will be: |
|---|---|
| 45 | 5% |
| 46 | 6% |

AFS may reserve and withhold an amount in a reserve account equal to up to ten percent (10.00%) of the Net Amount of all Accounts purchased. Said reserve account may be held by AFS and applied by AFS against charge backs or any other obligations of Client to AFS.

AFS may reduce the purchase amount by whatever retainage amount may or may not be held back on any given invoice or by a particular Project Manager decision.

3.3 If AFS does hold back a reserve amount, on or before the fifth Business day of the month following full payment of an individual Account, AFS will return to Client from the reserve account the amount on deposit therein in respect of the subject Account, less any factoring fee and any other charge provided for herein.

3.4 AFS will charge Client's account AFS's standard wire transfer fee on all wire transfers. Client will reimburse AFS for exchanges on checks, charges for returned items and all other bank charges. AFS may also, at AFS's option, charge Client's account for all amounts owed by Client to AFS under this Agreement and for all other Obligations. In addition, AFS will charge Client's account AFS's standard fees (see Exhibit B which is incorporated herein), for each new customer submitted by Client for credit approval, initial Client set up and for additional special handling services as may be requested by Client from time to time.

**Section 4. Representations, Warranties and Covenants**

4.1 Client represents, warrants and covenants, as to each Account sold and assigned hereunder that, at the time of its creation and at the time it is assigned to AFS hereunder, the Account is a valid, bona fide Account, representing an undisputed indebtedness incurred by the named account debtor for goods actually sold and delivered or for services completely rendered; there are no setoffs, offsets or counterclaims, genuine or otherwise, against the Account; the Account does not represent a sale of goods or services provided to a parent, subsidiary or affiliate or a Consignment, sale or return or a bill and hold transaction; no agreement written, oral, or otherwise, exists permitting any deduction or discount (other than the discount stated on the invoice); Client is the lawful owner of the Account and has the right to sell and assign the same to AFS; the Account is free of all security interests, liens and encumbrances other than those in AFS's favor, and the Account is due and payable in accordance with its terms. Without 1imitiog the foregoing, Client has not granted a security interest to a bank or any other creditor, which security includes the Accounts and/or all of the "present and after acquired property'" of the Client.

4.2 Client shall not grant or permit or suffer to exist any lien upon or security interest in Client's current assets in favor of any party other than AFS without AFS's written consent.

4.3 Client is a solvent entity in good standing under the laws of the State of Texas qualified in all States where such qualification is required; the execution, delivery and performance of this Agreement has been duly authorized and is not in contravention of any applicable law, Client's corporate charter or by-laws, if applicable, or any agreement or order by which Client is bound.

4.4 Client shall not change Client's corporate name, company name, or trade name or the location of Client's office or open any new offices without giving AFS at least thirty (30) days prior written notice.

At the present time, Client shall carry on business only at the address referenced in the first paragraph of this agreement. If the Client's address changes, Client will notify AFS in writing of the new address and any new contact information.

4.5 All books and records pertaining to the Accounts or to any current assets owned by Client shall be maintained solely and exclusively at the address in the first paragraph of this agreement and no such books and records shall be moved or transferred without giving AFS thirty (30) days prior written notice.

4.6 Client shall not sell, lease, transfer or otherwise dispose of all or substantially all of Client's property or assets, or consolidate with or merge into or with any corporation or other entity without AFS's prior written consent.

4.7 The trade names or styles set forth below are the only trade names or styles under which Client shall transact business; Accounts sold to AFS hereunder and represented by invoices bearing such trade names or styles are wholly owned by Client; the undertakings, representations and warranties made in connection therewith shall be identical to and of the same force and effect as those made with respect to invoices bearing Clients corporate or business name; Client's use of any trade names or styles is in compliance with all laws regarding the use of such trade names or styles. Client shall give AFS thirty (30) day's prior written notice of the change of any trade name

or style or Client's use of any new trade name or style.  At the present time, Client shall carry on business under the above name and the trade names set forth below:

Other Trade Names: _____

4.8    No discounts, credits or allowances will be issued, granted or allowed by Client to customers and no returns will be accepted without AFS's prior written consent; provided, however, that until AFS notifies Client to the contrary, Client may presume AFS's consent. discounts, credits or allowances once issued may be claimed only by the customer.

## Section 5.  Disputes, Chargeback's and Reserves

5.1    With respect to any Account, upon the occurrence of a breach (or at any time thereafter) of any of the representations or warranties contained in Section 4.1, or upon the assertion by a customer of a Dispute, AFS may chargeback such Account to Client.

5.2    Client shall immediately notify AFS in the event that a customer alleges any dispute.  Client shall promptly confirm in writing any verbal notification provided hereunder.  AFS may but is not obligated to settle, compromise, adjust or litigate all such Disputes upon such terms, as AFS deems advisable. If an unadjusted dispute de1ays the payment of any Approved Account or Non-Approved Account when due, AFS shall have the right to charge back that Account to Client.

5.3    AFS may, at any time in its sole and absolute discretion, charge back to Client all amounts owing or a portion thereof.

5.4    AFS shall have the right to charge back to Client any payment which AFS receives with respect to any Account if such payment is subsequently disgorged by AFS, whether as a result of any proceeding in bankruptcy or otherwise, unless AFS has assumed Credit Risk on the Account and disgorgement was the result of Credit Risk.

5.5    A chargeback shall not constitute a resale to Client of the subject Account; however, upon payment by Client to AFS of any monies due with respect to such charged back Account, title thereto shall revert to Client, subject, however, to AFS's security interest therein.  Client agrees to indemnify and save AFS harmless from and against any and all loss, costs and expenses caused by or arising out of disputed Accounts, including, but not limited to, collection expenses and attorney's fees incurred with respect thereto.

5.6    AFS may maintain such reserves as AFS, in AFS's sole discretion, deems advisable as security for the payment and performance of the Obligations.

## Section 6.  Administration

6.1    Client provides AFS the legal authority to endorse checks sent to it by Account Debtors, but payable to Client.

6.2    (a) Client shall, from time to time, execute and deliver to AFS confirmatory schedules of Accounts sold to AFS, together with the original of each invoice, acceptable evidence of shipment and such other documentation and proofs of delivery as AFS may require.  Each invoice shall bear a notice, in form satisfactory to AFS, that it has been sold and assigned to and is payable only to AFS.  Client agrees to prepare all invoices, but AFS may do so at AFS's option.  AFS shall mail all invoices to the Debtor unless AFS decides, at its option, to permit Client to mail invoices to the Debtor.  Client agrees to execute and deliver to AFS such further instruments of assignment, financing statements and instruments of further assurance as AFS may reasonably require.  Client hereby authorizes AFS to execute on Client's behalf and file such Uniform Commercial Code ("UCC") financing statements as AFS, may deem necessary to perfect and maintain the security interests granted by Client in accordance with this Agreement and any other agreement between Client and AFS, and client further agrees that AFS may file this agreement or a copy thereof as such UCC financing statement.  Client agrees to bear the cost of all filing fees, filing taxes, search reports, legal fees and other charges incurred by AFS in the perfection, protection and preservation of the rights and

collateral security herein granted to AFS.

(b) If any remittances are made directly to Client, Client's employees or agents or representatives, Client shall act as trustee of an express trust for AFS's benefit, hold the same as AFS's property and deliver the same to AFS forthwith in kind.  Failure to deliver misdirected payments in the form received within three (3) business days of receipt creates an event of default to our agreement, and may, at the option of AFS, result in a ten percent (10%) charge on the amount of the misdirected payment.  AFS and/or such designee as AFS may from time to time appoint are hereby appointed Client's attorney-in-fact to endorse Client's name on any and all checks or other forms of remittances received by AFS where such endorsement is required to effect collection and to transmit notices to customers, in Client's name or in AFS's, that amounts owing by them have been assigned and are payable directly to AFS; this power being coupled with an interest, is irrevocable.

(c) AFS may, always, have access to, inspect and make extracts from all of Client's records, files and books of account AFS may, at any time after default by Client hereunder, remove from Clients premises all such records, files and books relating to Accounts. Client will promptly furnish AFS with all statements prepared by or for Client showing Client's financial condition and the results of Client's operations and such other statements as AFS may reasonably require. Client authorizes AFS to communicate directly with Client's independent certified public accountants, bookkeepers, or accountants, and shall authorize such persons to discuss Client's financial condition and statements directly with AFS.

6.2 AFS may render a monthly statement of Accounts to Client within twenty (20) days after the end of each month. Such statement of Account shall constitute an account stated unless Client makes written objection thereto within thirty (30) days from the date such statement is mailed to Client.

6.3 Client authorizes AFS to disclose such information as AFS deems appropriate to persons making credit inquiries about Client.

## Section 7.  Collateral Security

As collateral security for all Obligations, Client hereby assigns and grants to AFS a continuing security interest in: (i) all of Client's presently existing and hereafter created Accounts and the proceeds thereof, (ii) all monies, securities and other property now or hereafter held or received by, or in transit to AFS from or for Client, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all of Client's deposits and credit balances in AFS's possession; (iii) all books, records and other property at any time evidencing or relating to the Accounts; and (iv) the proceeds of any insurance policies covering any of the foregoing. Recourse to the collateral security herein provided shall not be required, and Client shall always remain liable for the payment and performance of the Obligations upon demand by AFS.

## Section 8.  Events of Default

The occurrence of any of the following acts or events shall constitute an Event of Default: (a) if Client fails to make payment of any of the Obligations when due; (b) if Client fails to make any remittance required by this Agreement; (c) if Client commits any breach of any of the terms, representations, warranties, covenants, conditions or provisions of this Agreement, or of any present or future supplement or amendment hereto or of any other agreement between Client and AFS; (d) if Client becomes insolvent or unable to meet Client's debts as they mature; (e) if Client delivers to AFS a false financial statement; (f) if Client calls,  or has called by a third party, a meeting of Client's creditors; (g) if Client has commenced by or against Client any bankruptcy proceeding, insolvency, arrangement or similar proceeding; (h) if Client makes an assignment for the benefit of creditors; (i) if a receiver, receiver and manager, trustee or custodian is appointed in respect of Client's assets or any of them; (j) if Client suspends or discontinues doing business for any reason; (k) if a receiver or trustee of any kind is appointed for Client or any of Client's property; (l) if any guarantor of Client's Obligations shall become insolvent or have commenced by or against such guarantor any bankruptcy proceeding, insolvency, arrangement or similar proceeding; (m) if any guaranty of Client's obligations is terminated; (n) if any change of ownership occurs with

**AFS   3020 Bellaire Ranch Dr #1524 TX 76109  Ph. 817-821-7727**
**Matt@AdvisoryFinancialServices.com**
Page 5 of 7                                                                                           Factor Agreement

*Initials* ____

respect to more than forty (40%) percent of Client's capital stock or similar equity interest; or (0) if a notice of lien, levy or assessment is filed of record with respect to all or any of Client's assets by the United States or any department, agency or instrumentality thereof or by any state, county, municipal or other governmental agency.

Upon the occurrence of an Event of Default, AFS shall have any remedy allowed by law and the right to terminate this Agreement and all other arrangements existing between Client and AFS forthwith and without notice, and the Obligations shall mature and become immediately due and payable and AFS shall have the right to withhold any further payments to Client until all Obligations have been paid in full.  In addition, AFS shall have all the rights of a secured party under the Uniform Commercial Code, including, without limitation, the right to take possession of any collateral in which AFS has a security interest and to dispose of same at public or private sale and Client will be liable for any deficiency. AFS shall not be required to proceed against any collateral but may proceed against Client directly. In the event any action is brought to enforce, contest, challenge, modify or invalidate the terms of this Agreement, including, but not limited to, any lawsuit or arbitration, Client agrees to pay AFS's costs and reasonable attorney's fees incurred therein.

## Section 9. Limited Liability; Indemnity

Client agrees to indemnify and bold harmless AFS, its directors, officers, employees, representatives, agents, and affiliates, from and against liabilities, damages, penalties, actions, judgments, claims, costs, expenses and disbursements of any kind or nature whatsoever that may be imposed on, incurred by, or asserted against those indemnities identified in 1his section, by reason of any matter, cause, or thing relating to or arising out of this Factoring Agreement.

## Section 10. Terms and Termination

10.1 This Agreement shall continue in full force and effect for 12 months. The term of this agreement shall renew automatically for additional 12-month term unless sooner terminated in accordance with the terms hereof.  Client may terminate this Agreement effective at the end of any term by giving (90) days prior written notice to AFS. Notice of termination shall be given by messenger, registered or certified mail or commercial delivery service; provided, however, that Client shall not terminate this Agreement so long as Client is indebted or obligated to AFS. Notwithstanding such notice of termination, both parties' respective rights and obligations arising out of transactions having their inception prior to the specified date of termination shall not be affected by such termination and all terms, provisions and conditions hereof, including but not limited to, the security interests hereinabove granted to AFS, shall continue in full force and effect until all Obligations have been paid in full.  All of the representations, warranties and covenants made herein shall survive the termination of this Agreement.

10.2 In recognition of AFS's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the collateral listed in Section 7 hereof, notwithstanding payment in full of all Obligations by Client and the termination of this Agreement, AFS shall not be required to record any terminations or satisfactions of any of AFS's liens on such collateral unless and until Client has executed and delivered to AFS a general release in a form reasonably satisfactory to AFS. Client understands that this provision constitutes a waiver of its rights under § 9-513 of the UCC.

10.3 Upon Client's satisfaction of all Obligations following termination of this Agreement, AFS agrees to notify Client's customers that Client is no longer factoring with AFS and that payment of Client's invoices should thereafter be remitted as directed by Client.  It is Client's responsibility to promptly provide Client's customers with new payment instructions and to make sure Client's instructions are subsequently followed.  The termination of this agreement does NOT affect AFS's ability to continue to collect on any Accounts that was purchased prior to termination. AFS may continue to receive payments from Client's customers on some invoices even after Client has provided Client's customers with new payment instructions. In such event, AFS may, at its option, either (i) forward to Client proceeds from payments received from Client's customers or (ii) return payments by Client's customers to the customers without any further liability or responsibility to Client in respect thereof.  To cover AFS's costs in handling

payments received from Client's customers following termination of this Agreement, AFS may, at its option, impose a two and one-half percent (2.5%) charge on the amount of all proceeds forwarded to Client or returned to Client's customers after 60 days from the date of AFS's notice to Client's customers.

### Section 11.  Modifications

This Agreement cannot be changed or terminated orally; it constitutes the entire agreement between AFS and the Client concerning the subject matter hereof and shall be binding upon the parties' respective successors and assignments, but may not be assigned by Client without AFS's prior written consent.  No delay or failure on AFS's part in exercising any right, privilege, or option hereunder shall operate as a waiver thereof or of any other right, privilege or option.  No waiver whatsoever shall be valid unless in writing, signed by AFS, and then only to the extent therein set forth. If any term or provision of this Agreement is held invalid under any statute, rule or regulation of any jurisdiction competent to make such a decision, the remaining terms and provisions shall not be affected, but shall remain in full force and effect.

### Section 12.  Governing Law, Venue and Waiver of Jury

TO THE MAXIMUM EXTENT PERMIITED BY APPLICABLE LAW, ALL ISSUES RELATING TO THE TRANSACTIONS DESCRIBED HEREIN SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, IT BEING RECOGNIZED BY THE PARTIES THAT ISSUES SUCH AS CREATION, PERFECTION AND PRIORITY OF THE SECURITY INTEREST GRANTED TO AFS IN SECTION 7 HEREOF MAY BE GOVERNED BY THE LAWS OF THE JURISDICTION IN JOHNSON COUNTY, TEXAS.  CLIENT HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF TEXAS.  IF CLIENT PRESENTLY IS, OR IN THE FUTURE BECOMES, A NON-RESIDENT OF THE STATE OF TEXAS, CLIENT HEREBY WAIVES PERSONAL SERVICE OF ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECI'ED TO CLIENT, AT CLIENT'S ADDRESS APPEARING IN AFS'S RECORDS AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID.  CLIENT HEREBY WAIVES CLIENTS RIGHT TO TRIAL BY JURY IN ANY SUIT OR PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT.

In witness, whereof, the parties hereto have caused this Agreement to be executed as of the date first above written.

## Factor:  Advisory Financial Services, LLC

BY: _____
Type:  Matt Reynolds
TITLE:  CEO, Sole Manager
DATE:  2/2/24

## CLIENT:  LA Services LLC

AUTHORIZED SIGNATURE: _____

PRINTED OR TYPED NAME: ADRIANNE Foyt

TITLE: PRESIDENT

DATE: 2/2/24